W. H. FIREBAUGH AND S. N. HEDGES v. P. H. WARD, ADM'R, AND THE PRESIDENT, DIRECTORS, AND COMPANY OF THE PLANTERS' BANK OF OWENSBORO, KY.

1. LIEN—MORTGAGE—JUDGMENT.—As between a mortgage on land and a judgment rendered in a county different from that in which the land is, priority of lien will be determined by priority of registration in the county where the land is situate.

2. EVIDENCE. — The existence of a deed cannot be established by producing what purports to be a certified copy from the records of the county in which the land lies, until the non-production of the original deed is accounted for.

3. LIMITATION — CLAIMS AGAINST ESTATES. — The acceptance of a claim against an estate by the administrator which is apparently barred by limitation, and its approval by the Probate Court, merge it into such a *quasi*-judgment that it cannot be impeached by other creditors, under a plea of limitation, in a collateral proceeding.

4. BILL OF EXCEPTIONS—PRACTICE IN DISTRICT COURT.—The office of a bill of exceptions is to enable a party who considers himself aggrieved by any ruling, opinion, or action of the court below upon a given point, to put the same upon the record, with his objections thereto, at the time the same is made or announced.

5. PRACTICE IN DISTRICT COURT—BILL OF EXCEPTIONS.—The presiding judge who signs a bill of exceptions may, if he desires, incorporate in it the reasons for his ruling, opinion, or action.

6. PRACTICE IN DISTRICT COURT—BILL OF EXCEPTIONS.—When a bill of exceptions tendered by a party does not, in the opinion of

the presiding judge, fairly state the ruling, or the reasons therefor, when attempted to be given, and the party tendering it declines to adopt the corrections required by the judge, the presiding judge should indorse thereon his refusal to sign the same, and make out, sign, and file such a bill of exceptions as will, in his opinion, correctly present the ruling, opinion, or other action of the court as it actually occurred. If the party who tendered the bill for signature is not satisfied with this action of the judge, he may then make out a bill, and have the same signed by three respectable by-standers, citizens of the State.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

The opinion states the case.

*A. Dittmar,* for appellants, on the question of priority of lien, cited Big. on Est., p. 503; 1 Pars. on Cont., p. 399; 2 Pars. on Cont., p. 72.

Firebaugh's lien, secured by recording his judgment in Atascosa county on the 6th of November, 1874, could not be affected by Weir's formal renewal of the bank's claim on April 28, 1875. (McClenney *v.* McClenney, 3 Tex., 198; 1 Pothier on Obligations, p. 506; Lord *v.* Morris, 18 Cal., 482; Ang. on Lim., p. 289, citing Larthet *v.* Hogan, 1 La. Ann., 330.) As to the effect of the statute of limitations, see Duty *v.* Graham, 12 Tex., 437; Perkins *v.* Sterne, 23 Tex., 563; Teal *v.* Ayres, 9 Tex., 595; Heirs of Ross *v.* Mitchell, 28 Tex., 154.

*Wælder & Upson,* for appellees.

I. The lien of the mortgages held by the Planters' Bank is prior to the lien of the judgments of appellants.

II. The lien of the mortgages being prior to the lien of the judgments of appellants, the promissory note secured by the mortgages must be first paid out of the proceeds of any sale to be made of the mortgaged premises.

III. In the absence of any opposition, on the part of the legal representatives of Weir, to the order of sale applied

for by a creditor having a specific and prior lien, other creditors cannot be heard to object.

IV. Creditors cannot plead the statute of limitations to a claim against their debtor, if the latter fails or declines to make such plea. In this case there was no bar, and none could be pleaded, either by the debtor or by his creditors, as against the Planters' Bank.

V. Weir having in his lifetime acknowledged in writing the note of the Planters' Bank as a valid subsisting claim against him, the claim as presented to his administrator was not barred by the statute of limitations.

VI. The claim of the Planters' Bank, duly authenticated, having been presented to and allowed by the administrator and approved by the county judge, and the claim of the bank being prior in point of time and a prior lien to the claims of appellants, and a specific lien, the order of sale applied for should have been granted, and out of the proceeds of the sale the claim of the bank should be first paid.

BONNER, ASSOCIATE JUSTICE.—This case originated in the Probate Court of Bexar county, and the material issue between the parties is this: Which is the superior lien upon certain lands belonging to the estate of James Weir, deceased,—the mortgage of appellee, the Planters' Bank of Owensboro, Ky.; or the judgments in favor of appellants, W. H. Firebaugh and S. N. Hedges?

The record discloses the following material facts:

On the 21st of October, 1867, James Weir made and delivered his promissory note to the Planters' Bank of Kentucky for the sum of $3,491.78.

May 1, 1869, Weir, for the purpose of securing the above note, mortgaged to the bank a tract of land, recited therein as being in Karnes county, the mortgage being recorded in said county January 13, 1869.

April 28, 1875, Weir made an instrument, which is attached to this mortgage, in language as follows: "Since the mak-

ing of the foregoing mortgage to the president, directors, and company of the Planters' Bank of Kentucky at Owensboro, I have learned that the land therein described is situated in Wilson county, Texas, to correct which error and to renew said mortgage and the debt and note for $3,491.78, which, with the ten per cent. interest thereon from July 15, 1868, for value received, I promise to pay to said bank or order one day after the date hereof." This instrument was filed for record in Wilson county May 1, 1875.

May 8, 1869, for the purpose of "better securing the payment of said note," Weir executed another mortgage upon a tract of land in Atascosa county, which was filed for record therein June 4, 1872.

Weir having died, the bank presented its claim, duly attested, to his administrator, who, on August 15, 1876, allowed the same, and it was approved by the county judge September 6, 1876.

Appellant Hedges obtained a judgment in Bexar county against Weir on January 29, 1874, for $456.50, which was recorded in Wilson county February 24, 1875.

Appellant Firebaugh obtained judgment in Bexar county against Weir for $277.88 April 2, 1874, which was recorded in Atascosa county November 6, 1874, and in Wilson county February 24, 1875.

Both judgments were allowed by the administrator and approved by the county judge September 12, 1876.

September 8, 1876, the Planters' Bank filed in the County Court of Bexar county its application for an order of sale.

November 22, 1876, appellants filed their opposition to the sale, claiming priority of lien.

The County Court ordered the sale of the lands, giving priority of lien to the mortgages and first payment to the bank to the extent of its claim.

Hedges and Firebaugh appealed from the order of the County Court to the District Court of Bexar county.

The District Court sustained the action of the County

Court, and rendered its judgment accordingly. Hedges and Firebaugh gave notice of appeal, assigned errors, and brought the case to this court by appeal.

Priority of record giving priority of lien, the rights of the parties, as presented by this statement, would stand thus: The appellees' mortgage having been recorded in Atascosa county June 4, 1872, and the appellant Firebaugh's judgment not having been recorded therein until November 6, 1874, the appellees' mortgage lien as to the land in that county would be superior; the appellees' mortgage having been recorded in Wilson county May 1, 1875, and the judgment of the defendants Firebaugh and Hedges having been previously recorded therein February 24, 1875, their judgment lien as to the land in that county would be superior.

It is contended, however, by the appellees, that they had an additional mortgage covering the land in Wilson county to those above mentioned to secure their debt, of the same date as the first mortgage, May 1, 1869, and that this mortgage was recorded therein December 15, 1874, prior to the record of said judgments. This mortgage was not made part of the proof of their debt against the estate of James Weir, or referred to in that proceeding; neither was the original produced on the trial of this cause below, nor its non-production accounted for. Appellees, however, proposed to establish its registry in Wilson county of date December 15, 1874, by a certified copy of the records of that county.

To this the appellants objected, for the following, among other, reasons: Because the original was not produced, nor its absence accounted for; because there was no proof to show that the original was the authentic act and deed of the decedent Weir during his lifetime; because there was no evidence to show that the original document had ever been delivered by James Weir and been accepted by said bank as the contract between said parties; and because the bank failed to comply with the statutory provisions touching the admissibility of transcripts,—no affidavit of loss of original

having been made; no notice given of filing; neither had the transcript been filed before the trial, nor had any predicate been laid for its admission as at common law.

These objections were, we think, well taken, and for the error of the court in overruling them and admitting the transcript in evidence, the judgment must be reversed and the cause remanded.

Both the existence of this mortgage and its record in Wilson county prior to that of the record of the judgments of appellants, were necessary to be shown by competent testimony to entitle appellees to superiority of lien. The evidence of the existence of the mortgage was secondary, and no reason shown why the original was not produced.

The appellants raise the further objection to the judgment of the court below, that the claim of the appellees against the estate of James Weir was, at the date when their judgment liens attached, barred by the statute of limitations.

If it be admitted that the claim was then barred, and that a third person, who is not the debtor, can interpose this defense, yet the acceptance of the claim by the administrator and its approval by the court merged it into such a *quasi*-judgment that it could not be impeached on this ground in a collateral action; but the remedy of the other creditors of the estate of James Weir was by direct proceeding in the District Court, or by appeal from the order approving the claim, or, perhaps, under the law then in force, by a bill of review in the Probate Court. (Paschal's Dig., arts. 5660, 5783, 5791; Heffner v. Brander, 23 Tex., 631.)

On the trial below there was evidence of subsequent promises on the part of the deceased, James Weir, which would have taken the claims without any apparent bar of the statute of limitations.

In the case of Jones v. Underwood, 11 Tex., 118, where the debt, though apparently barred, had been allowed by the administrator and approved by the court, and a subsequent promise which would have revived the claim had not been

presented with the proof of debt—in a proceeding to set aside the allowance and approval, the court held, that to permit this would have the effect to defeat a legal and just claim, and refused to allow it to be done.

The presiding judge adds to the bill of exceptions taken on the trial as follows: "In view of the fact that many of the points indicated were discussed and exceptions taken to the several rulings, the court cannot reject the foregoing, and yet the court cannot subscribe to the points of law, facts assumed, and exceptions taken in bulk; and the question is submitted, if it is the correct practice to require of the court the labor of making and restating the exceptions that were taken?"

In response to this, we say that, under our practice and the act of 1846, (Paschal's Dig., art. 217,) and the Revised Code of 1876, soon to take effect, the office of a bill of exceptions is to enable a party who considers himself aggrieved by any ruling, opinion, or other action of the court below upon a given point, to put the same upon the record, with his objections thereto, at the time the same is made or announced. When the bill of exceptions is made out and tendered to the judge, he should submit it to the adverse party or to his counsel, if in attendance, and if the same is found to be correct it should be signed and filed during the term.

The judge presiding has the privilege to incorporate in the bill of exceptions the reasons for his ruling, opinion, or action. When tendered to him, if it does not fairly state the point made, or the reasons given therefor when they are attempted to be given, then he is not required to sign the same. In such case, however, he should suggest to the party who tenders the bill of exceptions such corrections as may be deemed necessary therein, and if they are agreed to, the same shall be made and the bill signed; if not agreed to, then it should be returned, with the refusal of the judge indorsed thereon, and he should make out, sign, and file with the clerk such bill of exceptions as will, in his opinion, pre-

sent the ruling, opinion, or other action of the court as it actually occurred. If, after this, the party tendering the bill of exceptions is not satisfied with the action of the judge in regard thereto, he has the right under the statute to resort to one signed by three respectable by-standers, citizens of the State.

For the error indicated in the first part of this opinion, the judgment of the court below is reversed and the cause remanded.

REVERSED AND REMANDED.