**HUMPHREY et al. v. STIDHAM et al.**

No. 12563.

Court of Civil Appeals of Texas. Dallas.

Jan. 31, 1939.

Lasseter, Simpson, Spruiell & Lowry, of Tyler, for appellants.

Bonner R. Landman and R. H. Sigler, both of Athens, for appellees.

BOND, Chief Justice.

Appellants, Fred Humphrey and E. W. Barr, instituted separate and independent suits against appellees, Mrs. L. H. Stidham, J. H. Peacock, and B. H. Stiles, involving, separately, what in fact was a single transaction. The two suits were consolidated and tried to the court, without the intervention of a jury, and judgment entered in favor of the defendants. Peacock and Stiles having shown conclusively that they were innocent purchasers of an interest in the property under consideration, and appellants conceding that their presence in the controversy is no longer necessary, this appeal does not undertake to disturb the judgment in their favor. The appeal is directed to the judgment in favor of Appellee, Mrs. L. H. Stidham.

On or about April 17, 1937, for and in consideration of $600, Mrs. L. H. Stid-

ham contracted and agreed to sell to E. W. Barr and Fred Humphrey a fractional interest in the oil, gas and other minerals under a 122-acre tract of land in Henderson County, together with a like fractional interest in the royalties payable under an oil and gas lease which then covered the land. Growing out of this contract, Mrs. Stidham executed two deeds—one to Fred Humphrey and the other to E. W. Barr—each reciting the consideration of $300 cash in hand paid by the grantee, and purporting to convey to the tenor following: "An undivided 1/128th interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land (here follows description of 122 acres of land, by metes and bounds). Said land being now under an oil and gas lease executed in favor of Humble Oil & Refining Co. et al. It is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes 1/128th of all of the oil royalty and gas rental or royalty due to be paid under the terms of said lease." Appellant Humphrey was the draftsman of the two deeds and, after being fully advised as to their contents, terms, and conditions and the amount of interest which the deeds purport to convey, Mrs. Stidham executed them in formality of said indentures.

There is no question raised but that the deeds are plain and understandable, present no ambiguity, and that each definitely states that the grantor, Mrs. Stidham, conveys thereby an undivided 1/128th interest in the minerals and royalties under the existing lease. The contention of appellant is that, in drafting the deed, a mutual mistake was made in the fractional amount of minerals and royalties respecting the 122 acres of land, in that, they purchased and appellee Stidham agreed to convey to them an undivided 1/4th of her 1/2, figuring 15-1/4th mineral and royalty acres; whereas, the two deeds, as drafted, only convey 1/64th of the 1/2 interest, a fraction less than two mineral and royalty acres. On the other hand, appellee contends that the deeds reflect her contract and agreement, that there was no mutual mistake in the drafting of the deeds, and that she only sold to appellants approximately two acres of her minerals and royalties, executing deeds in accordance therewith.

Appellants concede the evidence is conflicting as to the terms of the contract entered into between them and Mrs. Stidham, and, furthermore, it will be observed from the record that there is no assignment challenging the sufficiency of pleadings and evidence to sustain the judgment of the trial court. The assignments present only that, the evidence being in conflict, the court received injurious hearsay, self-serving and incompetent evidence in the respects as will hereinafter be related, to effect a reversal of this cause.

The rule is well settled in this state that, a judgment will not be reversed for the introduction of incompetent evidence, in a case tried by a court without a jury, where there was competent evidence to authorize the judgment rendered. The presumption will be indulged that the incompetent evidence was disregarded. 3 Tex.Jur. 1259; Clayton v. McKinnon et al., 54 Tex. 206; Smith v. Hughes, 23 Tex. 248; Creager v. Douglas, 77 Tex. 484, 14 S.W. 150; Biggs v. Doak, Tex.Civ.App., 259 S.W. 665; Lawther Grain Co. v. Winniford, Tex.Com.App., 249 S.W. 195; Knippa et al. v. Umlang, Tex.Civ.App., 27 S.W. 915; Brown et al. v. Fore et al., Tex. Com.App., 12 S.W.2d 114, 117, 63 A.L.R. 435. In the Brown-Fore case, supra, in adhering to this rule, Presiding Judge Harvey, speaking for the Commission of Appeals, said: "But the presumption loses its force when it reasonably appears from an inspection of the record that the incompetent testimony influenced in some degree the action of the trial court in rendering the judgment it did." The test is correctly declared in 3 Tex.Jur. 1259, and repeatedly approved by the Supreme Court that, "Ordinarily the presumption will be indulged that incompetent evidence was disregarded in favor of a judgment rendered by a trial court without a jury. Consequently, error in admitting testimony is not ground for reversal of a judgment if there is other and competent evidence to support the judgment, and, from the record, it is not reasonable to suppose that the court was influenced by it to the appellant's prejudice. And it is held that there can be no presumption that the effect of the wrongful admission of evidence was injurious in an action tried to the court where there is other evidence by which the judgment may be sustained. On the other hand, the presumption is rebutted where it reasonably appears from an inspection of the record that the incompetent evidence influenced in some degree the

action of the trial court in rendering its judgment."

■ It will be readily observed from the record that there was cogent competent testimony before the trial court to sustain the judgment. Appellants concede as much. The testimony of Mrs. L. H. Stidham and of her son, Ned Stidham, supported by the testimony of A. P. Smith, Dolph Tillison, and Eldon Thomas, was to the effect that Mrs. Stidham contracted and agreed to convey to appellants a fraction less than two acres of minerals and royalties under the existing lease, that there was no mutual mistake or error made in the drafting of the deeds, and that the deeds conveyed the quantum or interest in the land which the grantor intended to and did convey. Mrs. Stidham testified that, when appellants, Barr and Humphrey, first approached her, they advised her that they wished to buy two acres of her royalty; that later, she so advised her son, Ned Stidham, and, in the presence of Barr and Humphrey, she related to her son, Ned, what they (appellants) had told her with reference to buying two acres and the amount they had agreed to pay her for the same. She further testified that she was fully cognizant of the contents of the two deeds, that she was not in any manner mistaken about the transactions, and that it was, at all times, her intention to convey the interest that eventually was conveyed by the two instruments; accordingly, she executed and delivered the deeds. To the same effect is the testimony of Ned Stidham. Eldon Thomas testified that, before the deeds were executed, he heard Ned Stidham make inquiry of Mr. Humphrey whether or not the deeds, as prepared, conveyed only the two acres that his mother sold to them, to which Humphrey replied in the affirmative. And Dolph Tillison, the notary taking the acknowledgements of Mrs. Stidham to the deeds, testified fully that, he advised Mrs. Stidham at the time she executed the instruments of the amount of acreage which she was thereby conveying—a fraction less than two acres—and that Mrs. Stidham stated to him that two acres was all she intended to sell. Without further ado, we think the evidence supports the judgment, and, unless incompetent testimony influenced the action of the trial court in rendering the judgment, the case should be affirmed.

■ The record discloses that no findings of fact were filed by the trial court, other than that recited in the judgment. The judgment recites: "A jury being waived all matters of fact as well as of law were submitted to the court, and the court after hearing the pleadings, evidence and argument of counsel finds * * * that there was no mutual mistake between Fred Humphrey and E. W. Barr and L. H. Stidham in any of the transactions leading up to the execution of the mineral deeds involved in this lawsuit, and in the execution of the said mineral deeds." Obviously, such findings and the judgment based thereon follow the testimony of Mrs. Stidham and her supporting witnesses, thus we cannot indulge in the presumption that incompetent testimony, if any, influenced the action of the trial court in rendering judgment. There is nothing in the record showing that the trial court considered incompetent testimony.

■ Respecting the assignments, bearing on the primary issue of mutual mistake in the drafting of the deeds, appellants offered numerous witnesses qualified to give expert testimony as to the reasonable cash market value of royalties such as are involved here, who testified that the value thereof ranged from $40 to $80 per acre, thus in line with the contention of appellants that the consideration paid and recited in the deeds was for 15-1/4 mineral and royalty acres, and out of line for a fraction less than two acres, as contended by appellee. The prevailing values were relied upon by appellants as cogent circumstances in support of the issue involved. On the other hand, H. C. Turner and Jesse Malone were offered as witnesses by appellee, in line with her contention that the value of royalties at the time of the transaction was as stated in the deeds. The witnesses, after relating that they were acquainted with the fair cash market value of royalties in and around the Stidham tract of land, based upon offers made to them for their minerals and royalties covering land near and as favorably located as the Stidham land, knowledge of similar transactions consummated in the neighborhood, and, on hearsay, generally, what such royalties were selling for, over objection of appellant, Turner was permitted to testify, basing answer on the information just related, that the value was from $300 to $325 per acre; and Malone, $150 to $200 per acre. We submit the witnesses were qualified to express the opinions.

■ The qualification of a witness in such matters is largely in the discretion of the trial court; and where he states that he owned land in the vicinity,—naturally interested in values—that he knew the land in controversy, that he was offered a price, and heard of other sale transactions, and that, upon this information and knowledge, he knew the cash market value of the land, he has, in such manner, prima facie, qualified himself to state the value. A cognate question was under consideration by this court in Humble Oil & Refining Company v. Woods, 277 S.W. 152, 157, Judge Vaughan writing the opinion, in which is said: "It was shown that through discussion of the market value in reference to mineral leases the witness had sufficiently advised himself in reference thereto to express an opinion as to such values; this because market value in reference to undeveloped mineral leases must of a necessity rest more or less upon what is said by people generally about such values. Therefore, in matters of this kind, the law does not require that a witness shall be able to point out or testify to any specific sale in order to show market value, for, if it be shown that, through general discussion with others interested in the sale of such property, the witness has become generally advised as to the value of such form of property, he is then fully qualified to express the opinion thus formed by him as to the market value of such property."

■ This case was later reversed by the Supreme Court (Humble Oil & Refining Co. v. Wood, 292 S.W. 200), but the ruling as to the admissibility of the opinion testimony as to market value was in no way disturbed; the case was reversed on other grounds. See, also, 22 C.J. 587, 588 and 590; San Antonio & A. P. Ry. Co. et al. v. Ruby et al., 80 Tex. 172, 15 S.W. 1040; Murray v. Morris, Tex.Civ.App., 17 S.W.2d 110. Market value is, at best, only a matter of opinion, and, if incompetent, the hurtful admission of such evidence does not apply strictly where the case is tried to the court. We overrule the assignments respecting the testimony of Turner and Malone.

■ Appellants further assign error in the action of the court in admitting, over objections, the testimony of Will Green and Milton Smith. Green testified, in effect, that Ned Stidham brought to him the two deeds under consideration, and sought his interpretation of their contents, nature and extent, and that he advised him that, considering the deeds, his mother (Mrs. Stidham) had only 9-1/2 royalty acres left after deducting the two sales represented by the deeds, and told him his conclusion reached as to the effect of the deeds and what they conveyed. And, Smith testified that, after the deeds were prepared and before they were signed by Mrs. Stidham, her son, Ned Stidham, asked him to interpret the deeds as to the extent of their tenor and reading, and, after advising him the effect of the two deeds —purporting to convey approximately two acres of land—Stidham asked him "if he could get about Six Hundred ($600.00) Dollars for about two (2) acres of the land, if it wouldn't be a pretty good trade, and, I told him I thought it would".

These transactions and conversations between the witnesses, Green and Smith, and Ned Stidham, were admittedly had out of the presence and hearing of appellants, Barr and Humphrey, and might well be said incompetent testimony. However, the deeds upon which these witnesses were called upon to give evidence, were properly before the court, subject only, if need be, to the court's interpretation, and, manifestly, not a matter for the expression of expert opinion. Indeed, the two deeds purport to convey a fraction less than two royalty acres in the land for a consideration of $600, and that is, in effect, all that may be said of the testimony complained of. Obviously, such testimony could not, and, we think, did not influence the trial court in rendering the judgment it did.

Where the trial court, without the intervention of a jury, renders a judgment on competent testimony, and there is nothing in the record to show that the court considered incompetent testimony, it must be presumed by the appellate court that the trial court discriminated between evidence which is competent to establish the issue involved, and that which is not competent; and, though incompetent evidence may have been heard by the trial court, it will not be ground for reversal of the judgment. The assignments are overruled; the judgment of the court below is affirmed.

Affirmed.