A. C. VANNERBERG, INDEPENDENT EXECUTOR, ET AL, v. EMANUEL ANDERSON.

No. A-1399. Decided December 3, 1947.
Rehearing overruled December 31, 1947.
(206 S. W., 2d Series, 217.)

*Cline & Cline,* of Wharton, for petitioners.

*Lester Settegast,* of Wharton, for respondent.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

The title to the minerals in 240 acres of land in Wharton County is the subject of controversy in this case. The trial court rendered judgment in favor of petitioners, who were plaintiffs. The Court of Civil Appeals reversed that judgment and rendered judgment that petitioners take nothing by their suit, except that they shall have all royalties accruing from any mineral lease of the land until the royalties paid amount to $10,000.00. 202 S. W. (2d) 272.

The facts are undisputed. Evidenced by documents and by respondent's formal admissions and testimony, they are as follows: Respondent married the daughter of A. J. Ossian, who was the owner of the 240 acres. On October 21, 1909, Ossian and respondent executed a written contract by which Ossian agreed to sell and convey to respondent, and respondent agreed to buy, the 240 acres of land for a total consideration of $12,-584.00, of which $2,584.00 was paid in cash by respondent, and the balance was agreed to be paid in five installments of $2,-000.00 each on the first of January of the years 1911 to 1915 inclusive.

Respondent went into possession of the land in 1909 or 1910, lived on it as his home, improved it and farmed it until the year 1924 or 1925, when he told Ossian that he could not pay for it and gave the contract back to him. Respondent thereupon moved off of the land, went away. He has never paid any taxes on the land. He has never asserted any claim to the land, except a claim to the minerals which he began to assert when he learned in December, 1934 of the record of the deed hereinafter described. He made no payment for the land except the cash payment made when the contract of sale was executed.

On December 24, 1919, there was filed for record in Wharton County a deed executed by Ossian on December 11, 1919, which, according to its terms, conveyed to respondent all the oil, gas and mineral rights in the 240 acres of land, the last paragraph of the deed being as follows:

"It is understood and agreed and is a part of the consideration supporting this conveyance that all royalties accruing from any

lease of the oil, gas and mineral rights hereby conveyed shall be paid to the grantors herein, their heirs, assigns, executors and administrators, until such royalties so paid amount to Ten Thousand ($10,000.00) Dollars and such payments shall be credited to the payment of the amounts still unpaid by the said Emanuel Anderson, on a contract sale agreement, dated the 21st day of October A. D. 1909, executed by the said A. J. Ossian and Emanuel Andereson by proper instrument of conveyance of the lands hereinbefore described."

The deed was never delivered to respondent and he did not know of it when he surrendered the contract and moved from the property in 1924 or 1925. Ossian never told respondent about the execution and recording of the deed, although they talked together several times. Respondent first learned of the deed when he read it in the deed records in December, 1934. Thereafter respondent executed two mineral leases of the land, for which he received approximately the total sum of $2,000.00. He is asserting no claim to the surface, but claims the minerals under the deed from Ossian. The record does not show whether there has been any production of minerals on or near the land.

The Court of Civil Appeals based its judgment for respondent upon its conclusions that the mineral deed was by its terms an absolute conveyance of the title to the mineral estate in the land except for a reservation of royalties until $10,000.00 should be paid; that the execution and recording of the deed had the effect of vesting that title in respondent; and that the title remained in respondent unaffected by the recission of the contract of sale. Petitioners contend that the mineral deed was not executed with the intention on the part of the grantor to pass title to the minerals independently of the contract of sale and without payment of the purchase money for the land, but was intended as a part of the contract and to assist respondent in paying the purchase money; that title to the minerals was not vested in resepondent by the execution and the recording of the deed; and that consequently all of his rights or interest in or to the land, including the minerals, terminted when he surrendered the contract and abandoned the land.

■ We have reached the conclusion that the title to the minerals did not pass to respondent by the execution and recording of the mineral deed, and that the contract was still executory both as to the minerals and as to the surface when respondent surrendered the contract. This is true, because, as disclosed by the paragraph of the mineral deed above quoted, in the light of

the circumstances, the grantor Ossian did not intend to convey the minerals independently of the contract of sale and without payment of the consideration required to be paid by the terms of the contract.

■■ Delivery, which is essential to effective conveyance, may be presumed, prima facie, from the fact that a deed has been filed for record. Koppelmann v. Koppelmann, 94 Texas 40 57 S. W. 570; Delvin on Real Estate (3rd Ed.) Vol. 1, pp. 499-505, Sec. 292; 16 Am. Jur., pp. 655-656, Sec. 384; 26 C. J. S. pp. 598-601, Sec. 187. But notwithstanding the filing of the deed for record (or even manual delivery to the grantee), the deed does not vest title in the grantee when it is shown that the grantor, at the time he executed and filed it for record (or placed it in the hands of the grantee), did not intend that it should become operative as a conveyance of the title. Steffian v. Milmo National Bank, 69 Texas 513, 6 S. W. 823; McCartney v. McCartney, 93 Texas 359, 55 S. W. 310; Koppelmann v. Koppelmann, 94 Texas 40, 57 S. W. 570; Taylor v. Sanford, 108 Texas 340, 345, 193 S. W. 661, 5 A. L. R. 1660; Seibert v. Seibert, 379 Ill. 470, 41 N. E. (2d) 544, 141 A. L. R. 299, and Note pp. 306 and following: Devlin on Real Estate (3rd Ed.) Vol. 1, pp. 499-505, Sec. 292.

At the time when the mineral deed was executed and filed for record respondent was in possession of the land under a written contract of sale which obligated him to pay $10,000.00, the balance of the purchase money, and which contemplated the vesting of title to the land in him when he had paid the purchase money. The total purchase money was for the land, including the minerals. None of the $10,000.00 balance had been paid. The paragraph of the deed which has been quoted above provides in substance that all royalties accruing from any lease of the minerals in the land shall be paid to Ossian until the royalties so paid amount to $10,000.00, and that such payments shall be credited to the amount still unpaid on the contract of sale.

■ Thus the mineral deed contains express reference to the contract of sale, shows that the contract was still executory, and that the $10,000.00 balance of the consideration was still unpaid. According to its terms the deed appears to have been intended to assist respondent in completing his purchase by the application to the payment of the purchase money of royalties that might acrue from leases of the land, and not intended to vest the title to the minerals in respondent freed of the obliga-

tion to make payment of the purchase money. The unpaid purchase money to which the mineral deed refers was for the land, including the minerals, and respondent's title would be perfected only when he made full payment of the purchase money.

We are not here concerned with what would be the rights of persons who might have acquired deeds or leases of the minerals from respondent had he known of the mineral deed and executed deeds or leases, or with the rights of those to whom respondent executed leases after he read the record of the mineral deed. We are concerned .with the question of title as between petitioners, who are Ossian's heirs or devisees, and respondent. Our opinion is that the prima facie presumption of , delivery, and of consequent intention to convey title, from the recording of the mineral deed is overcome by the recitals in the deed and the other facts in evidence which have been mentioned, and that the recitals in the deed and those facts conclusively prove that the deed, nothwithstanding its words of conveyance, was not intended by the grantor to convey the minerals independently of the contract of sale and without payment of the consideration.

■■ Since the contract of sale was executory both as to the surface and as to the minerals when respondent surrendered the contract and abandoned the land in 1924 or 1925, his rights in or to the land, including the minerals, were then terminated. Johnson v. Smith, 115 Texas 193, 199, 280 S. W. 158; Davis v. Cox (Com. App.) 239 S. W. 917; Dikes v. Miller, 24 Texas 417; Miller v. Yates, 122 Texas 435, 443, 61 S. W. (2d) 767; Turner . v. Hunt, 131 Texas 492, 496, 116 S. W. (2d) 688. His attempted . acceptance of the mineral deed ten years later would not revive them.

The decision of the Court of Civil Appeals rests in part on what we believe to be too narrow a construction of the plaintiffs' petition. That Court construed the petition as alleging that the mineral deed was intended to vest and did vest title to the minerals in respondent. We do not so construe it. The petition alleges the execution of the mineral deed and describes it as a conveyance of the minerals to respondent, but alleges further that it was executed as a part of the contract of sale and to aid respondent in making payment of the balance due under the contract, and that when the contract was surrendered and the land abandoned, both the contract and the mineral deed were canceled and no longer effective. There is no allegation that the mineral deed vested title to the minerals in respondent.

We think it apparent that the pleader was undertaking to describe the contract and the mineral deed and by allegations of the surrender of the contract and the cancellation of the contract, and of the deed, which was executed as a part of the contract, to lay a predicate for the removal of the cloud caused by the recording of the deed. Ford v. Hackel, 124 Texas 402, 406-407, 77 S. W. (2d) 1043.

The judgment of the Court of Civil Appeals is reversed and the judgment of the district court is affirmed.

Opinion delivered December 3, 1947.

Rehearing overruled December 31, 1947.