Reuben W. POLK, Appellant,

v.

GROGAN'S WHOLESALE AND RETAIL
LUMBER et al., Appellees.

No. 3628.

Court of Civil Appeals of Texas.

Waco.

May 21, 1959.

Rehearing Denied June 18, 1959.

Oliver & Oliver, San Antonio, for appellant.

William H. Scott, Jr., Houston, for appellees.

TIREY, Justice.

This cause, (non jury) is one for accounting. At the conclusion of the testimony the trial court awarded the defendant judgment on its cross-action. In the Judgment we find this recital: * * * "the Court * * * is of the opinion that plaintiff, Reuben W. Polk, should take nothing by his cause of action as against all defendants, and is further of the opinion that cross-plaintiff, Grogan's Wholesale & Retail Lumber should have and recover of and from the cross-defendant, Reuben W. Polk, its just damages in the sum of Sixty-Six Thousand Five Hundred Thirty-Eight and 42/100 Dollars ($66,538.42), together with interest thereon from and after the 1st day of January, 1957," and decreed accordingly.

Polk, in open Court, excepted to the decree and gave notice of appeal to the First Supreme Judicial District Court, and seasonably perfected his appeal to that Court, and the cause is here on transfer.

Appellant in his brief says the judgment should be reversed and the cause remanded on three grounds, they are substantially to the effect:

1. Because there was no competent evidence introduced to meet the measure of proof required to prove appellee's case under the pleadings on which the case was tried.

2. Because there is no evidence of a probative nature to establish by a preponderance of the evidence any agreement on the part of appellant to pay the appellee any money for anything.

3. Because the pleadings and the proof failed to establish a case on open account and failed to establish a case in quantum meruit.

A comprehensive statement is necessary. Appellant went to trial on his original petition and his answer to the cross-action. In his original petition he alleged among other things that he was a building contractor constructing residences and other types of buildings for the owners of lots; that Grogan's Wholesale and Retail Lumber, a corporation, has for some period of time been engaged in the business of selling lumber and other building supplies at retail to builders and contractors, and in the conduct of such arrangement in the manner hereinafter set forth to finance contractors in the construction of improvements by advancing payroll for material for specific jobs and taking collateral security therefor until permanent financing is arranged.

In paragraph III appellant sets out what he designates as some nine (9) separate transactions wherein he names the owners of the property and gives the description of the property, and alleged with some detail the transaction made with the owner of the lot with reference to constructing certain improvements thereon, and further alleges that defendant, Grogan's Wholesale & Retail Lumber, during the course of the construction financed payroll and materials that went into the construction of the building, and he alleges specifically how each transaction was handled and how the debt and lien was handled, and when the matter was finally closed, the amount of money that was paid to Grogan's. In paragraph V of his original petition he alleges substantially that Grogan's, and the other defendants herein named, have obtained most of the money paid to them by asserting false and spurious claims as to the amounts, quantities, grades and prices of materials furnished to the several construction jobs; that plaintiff relied upon the integrity and honesty of defendants at all times, and did not suspect that defendants were making fraudulent and false claims against him as to the amount of money he owed them until he learned of the filing of false assignments and fraudulent affidavits that defendants filed with Stewart Title Company.

In paragraph VI he further alleges substantially that the defendants wilfully neglected and refused to provide plaintiff with itemized invoices furnished by Grogan's on each of the jobs referred to and did not furnish him invoices stating the nature of the merchandise furnished, and did not describe the same by grade nor quantity or unit price, and refused to furnish him with delivery tickets signed by an authorized agent or employee of this plaintiff; that plaintiff, being a building contractor and actually engaged in the business, knew the cost of the various types and grades of building materials and supplies that went into the construction of the improvements referred to, and that by reason thereof he claims that defendant, Grogan's has been amply paid for all materials furnished it on various jobs listed in paragraph III above, and has collected through false and fraudulent claims asserted against plaintiff not less than $35,000 more than defendant Grogan's was entitled to receive from the plaintiff for such building materials and supplies. He prayed for recovery against Grogan's and the other defendant in the sum of $35,000, and interest and

cost. Plaintiff made oath to his petition to the effect that the statements and allegations therein are true and correct. The defendants, Victor Von Baden and K. M. Zettle filed an original joint answer which consisted of a general denial. Defendant, Grogan's, went to trial on his first amended original answer and cross-action; the defendant, Grogan's, admitted that Stewart Title Company paid over to him the sum of $21,189.66, but specially denied the allegations in plaintiff's petition to the effect that the assignment dated June 30, 1956 from plaintiff to this defendant, and the liens securing such note in the sum of $22,400 was a forgery, and specially alleged that the plaintiff, Polk, did execute such assignment and that it was valid and genuine in every respect. Defendant also admitted that it did affix to the land in question set out in paragraph III F a valid mechanic's lien, and says it has been paid the amount due it for an advance of materials, to which it is entitled, in the sum of $20,-516.48. With respect to item III G of plaintiff's original petition, defendant denied the allegation that it had been paid for advances of material, but on the contrary alleges that there is due it by plaintiff the sum of $11,854.21, and that this sum is secured by a mechanic's lien described in plaintiff's petition in said paragraph III F. Defendant specially denied the allegations in paragraph III H to the effect that it had been paid for the advance of materials in connection with the contract described in said paragraph. With respect to allegations in paragraph III I, defendant admitted on the date alleged that defendant did affix a valid mechanic's lien against the property therein described in the sum of $11,842.40, for advance of materials in connection with the improvements therein described.

With reference to paragraph IV of plaintiff's original petition, defendant alleged that it advanced materials in the sum of $11,998.29, on this contract, and that said amount of money is due and owing to the defendant Grogan's by plaintiff, and that defendant is entitled to a mechanic's lien against the improvements constructed by virtue of the advance of materials, and that a valid mechanic's lien existed in favor of this defendant for such sum. Defendant Grogan's specially plead that in its course of dealings with plaintiff that it had advanced to him as construction money and materials the gross sum of $129,815.74, and had been paid only the sum of $63,277.-32, and that plaintiff is indebted to it in the sum of $66,538.42, for which sum it sues. It attached an Exhibit to its pleadings and marked it Exhibit "A".

Grogan's, in his cross-complaint alleged substantially that it was engaged in the business of selling lumber and building supplies, and that in so doing that it from time to time advanced payroll on specific jobs, and in so doing took collateral security therefor, and entered into a number of such business arrangements with cross-defendant, Reuben W. Polk. It specifically alleged:

"That atteached hereto is schedule, marked 'Exhibit A' and made a part of this cross-action, reflecting name of parties with whom cross-defendant contracted, the location of improvements, amounts advanced by cross-plaintiff for labor, and reasonable market value in Houston, Harris County, Texas, at the time advanced, of building materials advanced by cross-plaintiff and delivered over to cross-defendant. Also, reflected on said Exhibit A are amounts received by cross-plaintiff from said construction jobs. The remaining balance shown to be due to cross-plaintiff, to-wit, the sum of $66,538.42, has never been paid, represents advances of money and building materials by cross-plaintiff to cross-defendant, and in an amount which cross-defendant became bound and obligated to pay, and has heretofore promised to pay."

Exhibit "A" attached to the pleadings reflects that on one job to Ollie Mae Polk Johnson, materials advances $8,984.10, labor paid $4,154, builders risk premium

$75, total $13,213.10, received payment 5–3–56, $13,051.54, balance $161.56.

On the other transaction with Miss Johnson, shows materials advanced $8,-027.24, labor paid $3,785, builders risk premium $195, total $12,007.24, received (in full) $12,007.24, balance—none.

With reference to Floyd N. Williams, shows materials $5,009.91, labor paid $3,-868.80, interest paid Commonwealth $50, total $8,928.71, received as full payment $8,928.67, balance—none.

With reference to Randle and wife, materials advanced $4,453.02, labor paid $3,-647.15, total $8,100, received as full payment $8,100.

With reference to Rising Star Missionary Baptist Church, materials advanced $14,484.73, labor paid $10,348, total $24,832.73, received 7–20–56, $21,189.66, balance due $3,643.07.

With reference to Elvena Cash, materials advanced $13,411.48, labor paid $7,-105, balance $20,516.48.

With reference to Freddie Lee Cain and wife, material advanced $6,134.21, labor paid $5,720, total $11,854.21, balance $11,-854.21.

Another transaction with Ollie Mae Polk, material $4,152.41, labor paid $2,370, balance $6,522.41.

Another transaction with Ollie Mae Polk, materials advanced $9,197.40, labor paid $2,645, total $11,842.40, balance $11,-842.40.

Another transaction with Ollie Mae Polk, materials $4,463.29, labor paid $7,-535, balance $11,998.29; plaintiff alleged a total balance due of $66,538.42.

Exhibit "A" was verified in the following manner: "Before me, the undersigned authority, on this day personally appeared Kay M. Zettle, Vice-President of Grogan's Wholesale & Retail Lumber, a Texas Corporation, who, being by me, duly sworn, deposes and states: That she is the Vice-President of Grogan's Wholesale & Retail Lumber, a Texas Corporation, and as such is in possession of the books and records of said company, and is authorized to make this affidavit, that the foregoing statement and account entitled 'Exhibit A' and consisting of three pages, is a true and correct record and reflects the statement of account between Grogan's Wholesale & Retail Lumber and Reuben W. Polk, and that said account reflects all just and lawful credits and offsets due the said Reuben W. Polk."

Plaintiff Polk answered the cross-action, and in his answer he specially excepted to Exhibit "A" on five distinct grounds. The Transcript fails to show that the exceptions were called to the attention of the Trial Court, and we find no order entered thereon; therefore, it would serve no useful purpose to set out the exceptions filed by appellant. Appellant, in his reply to the original answer and cross-action of defendant, Grogan's, specially denied the verified account and alleged that said account is not just or true in whole or in part, and he made affidavit thereto. Appellant tendered no testimony in behalf of his cause of action, nor on his defense to appellees' cross-action.

Miss Zettle testified that she was Vice-President of Grogan's; that it was a corporation; that she was connected with the company for the years 1955 and 1956, and that she was personally familiar with the course of dealing between Grogan's Wholesale and Retail Lumber and Reuben Polk.

"Q. State briefly what the nature of the course of dealings was? A. Reuben Polk is a contractor and we sold him materials under a commitment which he obtained from various people. There were notes and also lien assignments for these various commitments for either apartment houses or dwellings he was getting ready to construct.

"Q. Was that in connection with the construction of these apartment dwellings? A. Yes, it was.

"Q. I exhibit to you now the Exhibit A of Defendant's First Amended Original Answer and Cross Action referring to ten transactions and reflecting with respect to each transaction material advanced, labor paid and moneys received, if any, for each job. I ask you whether or not the ten transactions there described reflect the course of business dealings between Grogan's Wholesale and Retail Lumber and Reuben Polk? A. This instrument reflects the transactions.

"Q. This was sworn to by you, I believe, on December 7, 1956. On that date does that reflect all moneys which had been received by Grogan's Wholesale and Retail Lumber with respect to the ten transactions? A. Yes. There had been no further moneys received.

"Q. No moneys have been received since that date?"

Exhibit "A" was tendered in evidence without any objection from plaintiffs. With reference to defendant's Exhibit No. 1, which is an original Exhibit, transmitted herewith on Court order, Miss Zettle testified as follows:

"Q. Miss Zettle, I hand you herewith an instrument which has been marked for identification purposes as Defendant's Exhibit No. 1. I ask you to examine it and state what that exhibit is? A. This one I am familiar with because I was just looking over it the other day. This states the actual deliveries the corporation made directly to the jobs as designated by Reuben Polk and also designates the delivery of other materials made not only by ourselves but other corporations throughout the city.

"Q. With respect to the other deliveries were those paid for by Grogan's Wholesale and Retail Lumber? A. They were paid for directly by Grogan's Wholesale and Retail Lumber. They are deliveries of materials which as a rule we don't carry in stock but the contractors needed, such as, sand and cement, and we ordered from another company directly and they made the shipment to the contractor direct. Then what we do we invoice it after we receive the invoice on our own invoice.

"Q. Is that break-down there made from your original records with respect to materials delivered by you of your copy of other contractors invoices of materials delivered by them but charged to Grogan's and with respect to checks for moneys advanced to Reuben Polk for payment of labor? A. They are all as designated on the listing here which we broke down.

"Q. Then am I correct in assuming from your testimony that with respect to the business dealings between yourself and Reuben Polk over these ten transactions, the separate items for which are shown on Defendant's Exhibit No. 1, that you advanced money and construction materials and received payment and that the balance due is in the sum as shown on Exhibit A of the cross action in the sum of $66,538.42? A. That is the balance that is owing in accordance with our records and the deductions for payments that had been received.

"Q. These payments were received as each of some of these items were closed. Is that right? A. That is true.

"Q. Those were shown as no balance items? A. That is true."

Exhibit 1 was tendered in evidence without objection by plaintiff.

With reference to defendant's Exhibit No. 3, which is an original Exhibit trans-

mitted herewith on Court order, Miss Zettle testified in part:

"Q. Miss Zettle, I hand you what has been marked for identification as Defendant's Exhibit No. 3 and ask you to state whether or not those are invoices of the Grogan's Wholesale and Retail Lumber reflecting delivery to the various job sites of the materials furnished directly by Grogan's Wholesale and Retail Lumber? A. These are not the invoices. These are the delivery receipts showing actually who received the delivery from Grogan's Wholesale and Retail Lumber to the job sites. The original invoices are in the possession of our bookkeeper.

"Q. These are actual deliveries? A. Those reflect the actual delivery and each and every invoice is broken down on the list which you just handed to me.

"Q. That would be defendant's Exhibit 1? A. Yes. Those show who receive the merchandise and who signed for them.

"Q. Are these all of your delivery slips with respect to the Reuben Polk transaction? A. With the exception of those that were delivered by other corporations.

"Q. These are materials which Grogan's itself delivered? A. That is true."

Exhibit 3 was tendered in evidence without objection. Miss Zettle further testified in part:

"Q. Miss Zettle, during the course of the conduct of your transactions with Reuben Polk was he furnished from time to time with any statements of his accounts with Grogan's Wholesale and Retail Lumber? * * * A. We gave him statements on two accounts. He has now the full statement of all the accounts.

"Q. Did he himself personally attend the closing where the amounts paid as shown on Defendant's Exhibit No. 2 were paid? A. He was at all the closings with one exception of the Rising Star.

"Q. Has that matter been finally closed? A. No, there is still a matter of a Thousand Dollars being held.

"Q. Did you ever give to him a statement reflecting that he owed you Sixty-Six Thousand or the amount that you sued for—Sixty-Six Thousand Five Hundred Thirty-Eight Dollars and Forty-Two Cents ($66,538.42). * * * A. The only statements that I ever did give him,—he wanted to know from time to time how much the actual closing was on each particular job and how much that job was running. I never did give him an actual written statement.

"Q. Did you ever give him a final figure on each of these particular jobs on which you did not receive payment? * * * A. Would you please restate the question.

"Q. With respect to these jobs that are shown on defendant's Exhibit No. 2 on which no payment has been received, was Reuben Polk ever furnished with a statement reflecting the amount due to Grogan's Wholesale and Retail Lumber by him for materials advanced and moneys advanced to him in connection with those jobs? A. He was given a statement in 1956, somewhere, I believe in August or in September of that year. I don't remember exactly which month.

"Q. Was that before suit was filed or after suit was filed? A. That was after the suit was filed, I believe.

"Q. Prior to the time the suit was instituted was there any conversation between Grogan's Wholesale and Retail Lumber, or anyone connected with that firm, and Mr. Reuben Polk, or any representative of his, concerning the

amount due? A. Reuben did come in the office and he would ask me from week to week approximately what the jobs were running, and I always did give him an actual physical tape. It was a tape from the adding machine so that he would have some idea how each and every job was running, but I went over that very closely with him every week.

"Q. Did you ever make any demand on him for the amount he owed Grogan's Wholesale and Retail Lumber? A. The only demands that we would make would be to ask him when the jobs were closing so they could be closed with the title company in accordance with the commitments that we had received.

"Q. Do you know of your own knowledge whether or not any of these items on which you have not been paid have been closed without your being paid and the title companies? A. I don't believe that they have been closed.

"Q. None of these items have been closed?"

The statement of Facts shows that plaintiff's counsel did not examine the witness, and after the cross-defendant rested the Court said: "Do you have anything, Mr. Davidson?" Mr. Davidson replied: "No, sir, we have nothing except some arguments on the attorney's fees. I give notice of appeal in this case."

█ As we understand appellant's brief, no point is here raised to the judgment which provided that plaintiff take nothing on his asserted cause of action. Therefore, the sole question here to be determined: Does the testimony of Miss Zettle, and the exhibit tendered in evidence, present testimony of sufficient probative force to sustain the judgment of the Trial Court? It is our view that it does.

In Wilson v. Teague Independent School District, Tex.Civ.App., 251 S.W.2d 263, 268

(W.R.) this Court made this statement of the Rule: "The Rule is well settled that the judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings." Citing Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286; See also cases collated under 4 Tex. Dig., Appeal and Error, █ See also In re King's Estate, 150 Tex. 662, 244 S.W.2d 660; See also Googins v. E. W. Hable & Sons, Tex.Civ.App., 237 S.W.2d 705 (N.R.E.), writ of certiorari denied by Supreme Court 342 U.S. 944, 72 S.Ct. 556, 96 L.Ed. 702. Appellant contends seriously that this cause should be reversed because the pleadings and the proof fail to establish a case on open account, and fails to establish a case in quantum meruit.

█ We find no merit whatsoever in this contention, and it is overruled. It is true that appellant did file certain exceptions in his pleadings, but there is nothing in the record to show that these exceptions were called to the attention of the Court, and no order was entered by the Court disposing of the exceptions. In this state of the record we think it is obvious that each of the exceptions were waived. See Rule 90, Texas Rules of Civil Procedure; also Gregory v. Reynolds, Tex.Civ.App., 219 S.W.2d 107 (N.W.H.); Roper v. Winner, Tex.Civ.App., 244 S.W.2d 355 (N.W.H.); Marshall v. Huron, Tex.Civ.App., 274 S.W.2d 572 (N.W.H.). In Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, 515, 141 A.L.R. 50, Opinion by Commission of Appeals, opinion adopted, Supreme Court made this statement of the Rule: "In the absence of special exception the petition will be liberally construed in pleader's favor and to support the judgment." Citing a long list of cases. The Supreme Court has not seen fit to change the Rule there stated. Going back to appellant's original petition on which he went to trial, it is shown that by his admis-

sions that he had some eight or nine jobs as a building contractor, and that on these jobs defendant Grogan's furnished to him certain materials, and that he was advanced in some instances payroll to carry the job along. In appellees' amended original answer and cross-action it sets out seven of the specific jobs referred to by appellant on which it furnished materials and advanced payroll with which to carry on the jobs and goes into some detail as to how each of the jobs was handled, and the amount due and owing by appellant on each respective job. Our view of the admissions of appellant in his pleadings as to his dealings with appellee Grogan's in the construction of these various jobs, and because the record shows that appellant waived his exceptions to the pleadings, the pleadings of appellee are entitled to a liberal construction, and we think they are sufficient to admit the testimony tendered by appellees, especially in view of the fact that there was no objection on the part of the defendant to any of the testimony tendered by appellee. An examination of defendant's exhibit 1 shows a listing of invoices that reflect the invoice number, date of delivery, amounts therefor, and amounts of labor paid and other costs and expenses paid. Defendant's exhibit 2, with a sworn account attached to appellees' cross-action was likewise tendered in evidence without any objection. Defendant's exhibit 3 shows the delivery slips which reflected the delivery by appellee to appellant at job sites selected by appellant and receipted for by appellant and his representatives at each job. We think the testimony of Miss Zettle as to the course of business dealings between the parties and her statements relating to the records and the exhibits is of sufficient probative force when considered in connection with the foregoing exhibits and appellant's admissions in his pleadings, to show the amount of credits which appellant was entitled to receive, as well as the amount due and owing by appellant to appellees.

■ It is true that appellant timely requested the court to present and file findings of fact and conclusions of law under provisions of Rule 297, T.R.C.P., and it is a fact that the trial judge did not file such findings of fact or conclusions of law; however, appellant did not comply with the further provisions of the rule by calling such omissions to the attention of the trial judge within the stated time. As we understand our decisions, the foregoing situation placed appellant in position where he cannot complain of the court's failure to file such findings of fact and conclusions of law. In this state of the record the Rule is that the judgment of the court should be affirmed if it can be supported on any theory presented by the record. That Rule was applied in LaForce v. Bracken, Tex.Civ.App., 163 S.W.2d 239, affirmed by Supreme Court, 141 Tex. 18, 169 S.W.2d 465. See also Kelso v. Wheeler, Tex.Civ.App., 310 S.W.2d 148 (N.W.H.) and cases there cited.

Finally, the transactions described by appellant in his original petition occurred between December 1, 1955 and July 27, 1956, and he brought his suit on October 22, 1956. We think under the pleadings and under the itemized evidence here tendered, the Court had before it in effect an account stated as between the parties, and that such situation brings this case within the doctrine announced in Davis v. Gilmore, Tex.Civ.App., 244 S.W.2d 671 (W.Ref.). See also Jones-O'Shaughnessy Lumber Co. v. Dean, Tex. Civ.App., 88 S.W.2d 567 (N.W.H.); 1 C.J.S. Account, Action on § 16 c. (2); 1 C.J., Accounts and Accounting, Sec. 187.

After careful consideration of this record we are of the view that the pleadings are sufficient and the testimony ample to sustain the judgment rendered, and each of appellant's points is overruled.

Accordingly, the judgment of the Trial Court is affirmed.