**Leland O. WEBB et ux., Appellants,**

**v.**

**Irene MITCHELL et al., Appellees.**

**No. 14108.**

Court of Civil Appeals of Texas.

Houston.

July 11, 1963.

Rehearing Denied Oct. 24, 1963.

Wilson M. Rutherford, El Campo, for appellants.

Willis & Willis, George P. Willis, El Campo, for appellees.

COLEMAN, Justice.

This is a suit for partition of real estate. The trial court found that appellees, Irene Mitchell, Leola Storey, Anna Belle Odell, and Clyde Webb, owned a 4/7ths interest in the property and ordered it partitioned by commissioners. The appellants, Leland O. Webb and Cora Spree Webb, who contend that they have record title to 6/7ths of the property and title by limitation to the entire property, have perfected their appeal.

Appellants' Points I through V, complaining of alleged procedural errors of the trial court, were expressly waived in oral argument and will not be discussed further.

Sam Bishkin et al. conveyed the property in dispute to Leland O. Webb, M. A. Webb, Mrs. Leola Storey, Henley Webb, Clyde Webb, Mrs. Irene Mitchell and Mrs. Anna Belle Walker (now Anna Belle Odell) by general warranty deed dated November 12, 1946. During the year 1948 a general warranty deed conveying the property to Leland O. Webb and his wife, Cora Spree Webb, was executed by all of the other grantees in the Bishkin deed except Mrs. Irene Mitchell. She signed the deed, but since her husband declined to sign it Mrs. Mitchell did not acknowledge the deed. Mrs. Mitchell testified that she retained possession of the deed for several years when she gave it to Leland O. Webb at his request. Leland O. Webb testified that the deed was given to him after Mr. Mitchell refused to sign it and that he kept it in his possession and finally recorded it in 1953. The deed was acknowledged by M. A. Webb on January 9, 1948, in Brewster County; by Mrs. Walker on January 12, 1948, in Midland County; by Mr. and Mrs. Storey on January 17, 1948, in Bexar County; by Clyde Webb on January 22, 1948, in Sedgwick County, Kansas; by Henley Webb on February 17, 1948, in Harris County; and Mrs. Mitchell signed the deed in El Campo, Texas, on March 2, 1948.

Mrs. Mitchell testified as follows:

"Q Will you tell the Court Mrs. Mitchell, what the agreement was among your brothers and sisters that caused the preparation of this deed?

"A Actually, I didn't know anything about the instrument until it was brought to us to be signed and we were told at that time that it was—if all of the heirs and children did sign the instrument that it was to be delivered to my brother, Leland and that he was to in consideration of being given that instrument, he was to see that the taxes were paid and the place was taken care of and who my father, who was living in his own old home at that time to be care— for.

"Q In other words, the children wanted your father to be cared for?

"A Yes, sir.

"Q And was that one of the reasons that they signed the deed?

"A I can't say that it was their reason, I feel like it was. I have been told by all of them that it was—

"MR. RUTHERFORD: If it please the Court, that is hearsay.

"Q (Continuing questions by Mr. Willis:) Was the matter discussed rather frequently among the children—other children, other than Leland?

"A Yes, sir, it was.

"Q And the agreement that it would be signed under those conditions, is that correct?

"A Yes.

"Q That it would be delivered only if everyone signed it?

"A That's right.

"Q And that the property was to be used by Leland, he was to pay the taxes and to used by him to care for your father?

"A Yes, sir.

"Q After your husband refused to sign it, Mrs. Mitchell, did you keep the deed in your possession for several years?

"A Yes, sir, I did have it at my home, it was just left there until, I think around 1953.

"Q And then what happened to the deed?

"A Leland called and wanted to know if he could pick the paper up and I said, 'yes', 'yes, If I could find it,' It was still there, he could have it and he came by the house then and I gave it to him.

"Q Did you ever have any legal advise given you Mrs. Mitchell to the effect that a married woman— signature, without the joinder of her husband as annullity?

"A Yes, sir, I have.

"Q Did you feel that when you delivered the deed to Leland, that you were delivering him a worthless paper?

"A Yes, I did, I didn't have no idea that anything could be done with it.

"Q Did you have the authority of these other grantors to—in writing or orally or any other way, did you have their authority to deliver this deed to Leland without the signature of everyone, to make it legal?.

"A No, I didn't.

"Q And you delivered it to him, because you felt that it had no legal effect, is that right?

"A That's right."

Clyde Webb testified that it was his understanding that one of the children should be given title to the property to handle it. The property was not to be sold as long as their father wanted to live there and upon a sale being made, the proceeds were to be divided equally among the seven children. At one point he testified that the deed was to be delivered only if all named grantors signed it. Later he said that he never thought of what would happen if everyone did not sign it. He also testified he told Mrs. Mitchell that it was all right to deliver the deed, but the evidence indicates that this statement was made before the deed was signed by anyone, and he later testified that he didn't remember telling her to deliver the deed and he didn't believe there was any agreement on it. He testified that he had never talked to Leland Webb about the delivery of the deed and that he did not have any agreement with him concerning the return of the property; that he just trusted in Leland's good faith. He testified that when he signed the deed he intended that title to the property would "rest" in Leland Webb until it was sold and divided.

Mrs. Odell testified that it was her understanding of the agreement among the parties that "it would have been of no use and not to be delivered unless we all signed it." She testified that it was the understanding

of all the children that "Leland had offered to pay the back taxes on the place and fix it up or improve it or sell it or whatever all the children agreed to do." She also testified that their father was to have a home as long as he lived and that in the event the property was sold the proceeds were to be divided equally. She testified that she did not authorize Mrs. Mitchell to deliver the deed.

Mrs. Storey testified that all of the children were to agree on what was to be done; that Leland was to take care of their father and the place; and that the deed was to be "turned over to Leland only on the condition that all the parties sign it." She later testified that it was to be delivered only if all the parties signed the deed and acknowledged it; that she did not deliver the deed to Leland or authorize Mrs. Mitchell to do so.

Leland Webb testified that he did not request anyone to give him the deed and that he did not know about the deed until it was signed and Irene gave it to him, and that he had no agreement or understanding that the property would be reconveyed or accounted for to any of his brothers and sisters.

In answer to the question: "Have you told other people in the community that the property belongs to you?" he stated: "No, sir, just a few words, I told them that I was paying taxes on them." Referring to 1948, 1950, or 1953, he testified in answer to the question: "You weren't at that time trying to exclude your brothers and sisters from their share of the homestead property, were you?" as follows: "I thought if they would pay up their part, I would go along, but they never did." He also testified that in 1954 he did not intend to exclude them from participating in ownership of the property "if they had put up their part and kept it up, and they didn't." He admitted that he remembered something about counsel for appellees asking for a list of his expenses in 1959, which he agreed to furnish, so that the total could be divided by

seven and each of the appellees could repay him the share due.

Henley Webb and M. A. Webb were impleaded as defendants by appellees. An answer was filed by Henley Webb in which he alleged that the deed by which the property in question was conveyed to Leland O. Webb was a good and sufficient general warranty deed and was properly delivered. He alleged that by the execution and delivery of the deed it was the intention of the grantors that a complete gift of the property be made to the grantees.

It appears that M. A. Webb executed a confirmation deed to Leland O. Webb of his interest, if any, in the property and he filed no answer. While his deposition was taken and appears in the transcript, it is not included in the statement of facts and does not appear to have been introduced into evidence.

■ The trial was to the court without a jury and no findings of fact or conclusions of law were requested or filed by the trial court with the exception of certain recitations found in the judgment. The judgment recited that the trial court finds that appellees and appellants jointly own the property in question and that Irene Mitchell, Leola Storey, Anna Belle Odell, and Clyde Webb own an undivided 4/7ths interest in the property and that appellants, Leland O. Webb and Cora Spree Webb own the remaining 3/7ths interest. This finding of the trial court is supported by the evidence showing that appellees did not intend that the deed to Leland O. Webb and Cora Spree Webb be delivered until all the other joint owners properly executed the deed. Mrs. Irene Mitchell, as previously stated, has never conveyed her interest. We imply in support of the trial court's judgment that the appellees did not intend that the deed should become operative as a conveyance of the title until it was signed and acknowledged by Mrs. Irene Mitchell and her husband, and that delivery of the deed, in the absence of the properly acknowledged signature of Mrs. Mitchell, was not authorized

or intended by them. Under such circumstances the deed did not divest these appellees of title to the land. Vannerberg v. Anderson, 146 Tex. 302, 206 S.W.2d 217; Koppelmann v. Koppelmann, 94 Tex. 40, 57 S.W. 570; Steffian v. Milmo National Bank, 69 Tex. 513, 6 S.W. 823; Marble v. Marble, 52 Tex.Civ.App. 380, 114 S.W. 871; North v. North, Tex.Civ.App., 2 S.W.2d 481.

■ The deed is not ineffective as to M. A. Webb and Henley Webb. If it was their intention, at the time they executed the deed and mailed it to another of the grantors, that the deed become operative to vest title as to their interests, the fact that Irene Mitchell failed to acknowledge and deliver the deed to Leland Webb would not render the deed invalid as to their interests. Clark v. Hoover, 51 Tex.Civ.App. 181, 110 S.W. 792, error ref.; Minor v. Powers, Tex.Civ.App., 38 S.W. 400. They were not parties-plaintiff in the trial court and have not appealed from the judgment of the trial court.

The trial court denied appellants' pleas of limitation title. There is evidence in the record from which the trial court could properly have found that Leland O. and Cora Spree Webb made no adverse claim to the property until a few months prior to the date on which this suit was filed and that appellees had no actual knowledge, and insufficient notice to constitute knowledge as a matter of law, that they claimed ownership of the entire property.

Appellants urge that the trial court erred in failing to allow judgment for the amounts spent in payment of taxes and paving liens and permanent improvements to the property. The trial court found that the delinquent and current taxes paid by appellants "will offset any rentals due by the said Leland O. Webb" for the use of the property in question. Mrs. Irene Mitchell, one of the owners of the property, testified that she had made inquiries concerning rentals paid in the community and had discussed rental values with residents and people experienced in the sale or rental of city property, and had reached a conclusion as to the rental value of the property in question. She was then asked what her conclusion was and the question was objected to on the ground that her opinion would be based on hearsay and that she was not qualified to testify to the rental value of the property. The court admitted the testimony carrying the objection with the case. No further request for a ruling on the objection was made. She then testified that "from my discussion from a number of people, who are familiar with rental of places * * * a fair monthly rental on the land would be between $40.00 and $50.00 a month." No other testimony as to rental value was introduced. Appellant contends that the court erred in admitting this testimony.

■ Leland Webb testified that he had built a home on the property costing $6,000.00 and had spent $1100.00 for improvements on the home. He testified that he had the land filled and graded and that, counting his own labor, time and machinery, the cost was about $1500.00. He introduced receipts showing the payment of taxes and a paving lien assessment in substantial amounts. There is no testimony that any of appellees desired to make use of the property or were denied the right to use it until a few months prior to the filing of the suit. Appellant used the property for his residence and for several years conducted his business on the property. He used more than his proportionate share of the property. In his judgment the trial court suggested and recommended to the commissioners that Leland O. Webb be awarded a portion of the premises to include the improvements placed on the property by him. Neither party has objected to this part of the decree. Where a party has placed improvements on land owned in common, that portion of the land on which such improvements were placed should be awarded to him on partition if it can be done without detriment to the interests of the cotenants. Broom v. Pearson, Tex.Civ.App., 200 S.W. 191, error

ref. In such a case the court should not require the cotenants to pay their proportionate part of the value of the improvements. Spicer v. Henderson, Tex.Civ.App., 43 S.W. 27.

■ Appellants waived the objection to the testimony of Mrs. Mitchell as to rental value by failing to secure a ruling from the trial judge. City of Denison v. Corcoran, Tex.Civ.App., 253 S.W.2d 321; Wilson v. Texas Cresoting Co., Tex.Civ.App., 270 S.W.2d 230.

■ It is well established that the qualification of a witness testifying as to market value is primarily a question for the trial court, whose ruling thereon will not be disturbed on appeal unless it is clearly erroneous. Slack v. Magee Heirs, Tex. Civ.App., 252 S.W.2d 274, aff'd 152 Tex. 427, 258 S.W.2d 797; Foley Bros. Dry Goods Co. v. Settegast, Tex.Civ.App., 133 S.W.2d 228, error ref.

■■ No special study, training or experience is necessary to enable a witness to estimate values, but he must possess: (1) a knowledge of the general value standard of things in that particular class; and (2) a knowledge of the particular thing to be valued. McCormick and Ray, Tex. Law of Evidence (2d Ed.), § 1422. The fact that Mrs. Mitchell's knowledge of rental values of other properties was derived from information furnished her by others does not deprive her testimony of probative value. Humphrey v. Stidham, Tex.Civ.App., 124 S.W.2d 921; Murray v. Morris, Tex.Civ.App., 17 S.W.2d 110, error dism.; Humble Oil and Refining Co. v. Woods, Tex.Civ.App., 277 S.W. 152, rev. on other grounds, Tex.Com.App., 292 S.W. 200; Missouri, K. & T. R. Co. v. Cocreham, 10 Tex.Civ.App. 166, 30 S. W. 1118; Galveston, H. & S. A. Ry. Co. v. Polk, Tex.Civ.App., 28 S.W. 353.

■ The expense incurred by appellants for filling in the lots cannot properly be charged to the cotenants. It cannot be determined from the evidence whether this improvement affected all of the land, and, if it did not, what portion of the land was filled in and leveled. We cannot determine that the land cannot be partitioned so as to give appellants the benefit of all of their improvements. Spicer v. Henderson, supra.

■ The trial court did not err in offsetting the value of the use of the property against appellants' claim for reimbursement for taxes and other funds expended by them for the preservation of the common property. Roberts v. Roberts, 136 Tex. 255, 150 S.W.2d 236; Rucker v. Butcher, Tex.Civ.App., 300 S.W.2d 183.

■ Appellants complain of the action of the trial court in allowing questions concerning a conversation between Leland O. Webb and appellees' attorney. This action of the court, if error, was not of such a nature as to probably cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

Appellant has attacked the trial court's conclusion that a constructive trust exists between the parties by several points of error. Since we have determined that the deed into appellant was ineffective as a conveyance of the interests of appellees, we do not deem it necessary to prolong this opinion by discussing these points. All other points of error not specifically discussed herein have been carefully considered and are denied.

The judgment of the trial court is affirmed.

### On Motion for Rehearing

On motion for rehearing appellants assert that it was not their intention to waive their Points I and II. In view of this statement we will consider these points.

■ Point I presents appellants' contention that the court erred in proceeding to trial without first acting on special exceptions to appellees' petition. The record

does not reflect that the special exception was called to the attention of the trial court prior to rendition of judgment, in which event it was waived. Connor v. Boyd, Tex.Civ.App., 176 S.W.2d 212; Tarkington v. Continental Casualty Co., Tex.Civ.App., 341 S.W.2d 490; Kaherl v. Kaherl, Tex.Civ.App., 357 S.W.2d 622; Rule 90, Texas Rules of Civil Procedure.

■ Appellants' second Point complains that appellees' petition and amendments thereto were subject to appellants' special exception because it failed to allege a cause of action for partition or trespass to try title. Rule 90, supra, specifically provides that every defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by motion or exception in writing and brought to the attention of the judge in the trial court, in a non-jury case, before the rendition of judgment, shall be deemed to have been waived. Where a party files exceptions complaining of defects in pleadings pertaining to matters of substance, it is necessary that he call them to the attention of the trial court before the rendition of judgment, in a non-jury trial, and that he secure an order disposing of the exceptions, if the action taken by the court on the exceptions is not otherwise shown by the record. Polk v. Grogan's Wholesale & Retail Lumber Co., Tex.Civ.App., 325 S.W.2d 201; Talbert v. Herrera, Tex. Civ.App., 353 S.W.2d 948.

Appellants request that we find as a fact that appellees had no agreement concerning any conditions under which the deed would be delivered prior to the dates that each of appellees signed the deed, and that such conditions were never made known to appellants. As the testimony quoted in our opinion shows, there was testimony of an agreement that the deed would not be delivered unless all children signed and acknowledged it. We are unable to make the requested findings for another reason. No findings of fact or conclusions of law were requested of the

trial court, although certain findings are included in the judgment. No findings were made concerning delivery of the deed or agreements relating thereto.

■ The Court of Civil Appeals has no power to find facts in the first instance. The Leader, Inc. v. Elder Mfg. Co., Tex. Com.App., 39 S.W.2d 880. In Construction and General Labor Union v. Stephenson, 148 Tex. 434, 225 S.W.2d 958, the Supreme Court stated:

"No request was made of the trial court to make and file findings of fact and conclusions of law, under Rules 296–299, Texas Rules of Civil Procedure, and no separate findings and conclusions were filed. In the absence of findings of fact in a case tried without a jury, it is settled that we must test the validity of the judgment on the assumption that the trial court found every disputed fact in such a way as to support the judgment he rendered. Rolison v. Puckett, 145 Tex. 366, 198 S.W.2d 74; International Union of Operating Engineers v. Cox, Tex.Sup., 219 S.W.2d 787; North East Texas Motor Lines v. Dickson, Tex. Sup., 219 S.W.2d 795. Petitioners point out that the judgment in this case recites certain findings of fact and, after granting an injunction against picketing, provides that all other relief not specifically granted is denied. However, this denial of other relief does not constitute a finding of the nonexistence of facts not recited in the judgment; and in this situation omitted findings necessary to support the judgment will be supplied by a presumption in support of the judgment, if there is evidence in the record to sustain such omitted findings. Bednarz v. State, 142 Tex. 138, 176 S.W.2d 562. Moreover, it is established that this court will not reverse a judgment of the trial court affirmed by the Court of Civil Appeals if the judgment is correct in view of the

entire record, even though in our opinion one or both of the lower courts have given erroneous reasons for rendering or upholding the judgment. Walker v. Garland, Tex.Com.App., 235 S.W. 1078; Bordelon v. Philbrick, 125 Tex. 460, 84 S.W.2d 710; Payne v. Bracken, 131 Tex. 394, 115 S.W. 2d 903. * * *"

There is no evidence that appellees specifically authorized Mrs. Mitchell to deliver the deed to appellants unless it was properly signed. We remain of the opinion that under such circumstances the fact that Mrs. Mitchell gave appellant Leland O. Webb the deed under the impression that it was not effective as a deed, since her husband had not signed it and she had not acknowledged it, would not constitute a delivery of the deed.

The motion for rehearing is denied.